**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff-Respondent,

v.                                           CIV 07-0360 RB/CEG
                                           CR 05-0526 RB

STEWART TODD CORDER,

       Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Stewart Todd Corder's pro se Motion Pursuant to 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and the

Government's response thereto.  (Doc. 63, 66.)[1]  As explained below, several of Corder's claims

can be resolved against him on the basis of the record alone, but several other claims cannot be

resolved without an evidentiary hearing.  Therefore, I recommend that an evidentiary hearing be

conducted on certain claims and that the motion be denied in all other respects.

## I. Procedural Background

Count one of a two-count indictment charged Corder with possession with intent to

distribute five grams and more of methamphetamine.  Count two charged him with carrying a

firearm during and in relation to the foregoing drug trafficking crime.  (Doc. 10.)  Represented

by Barry Crutchfield, Corder pled guilty without a plea agreement.  (Transcript of 6/24/05 Plea

Hearing [hereafter Plea Tr.].)  He subsequently retained a different attorney, Robert Beauvais,

---

[1] All document number references are to CR 05-0526 RB.

who filed a motion to withdraw the plea.  (Doc. 27, 30, 31.)  The motion contended that Corder

had viable defenses to the seizure and arrest underlying the prosecution, but Crutchfield failed to

investigate possible defenses.  (Doc. 31.)  Judge Brack granted the motion.  (Doc. 39.)  Beauvais

then filed a motion to suppress and memorandum in support.  (Doc. 41, 42.)  After conducting a

hearing and allowing supplemental briefing by both sides, Judge Brack issued a memorandum

opinion and order denying the motion to suppress.  (Doc. 47, 51, 52, 53.)

Thereafter, Corder entered into a plea agreement with the Government, reserving his

right to appeal the denial of the suppression motion.  (Doc. 57.)  Judge Brack accepted Corder's

guilty plea and sentenced him to 78 months in prison for count one and a consecutive period of

60 months for count two, resulting in a total term of imprisonment of 138 months.  (Doc. 56, 61.)

Corder did not file an appeal.

## II. Standard for Evidentiary Hearing

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §

2255.  Under this standard, an evidentiary hearing is necessary if the claims relate to occurrences

outside the courtroom, upon which the record could "cast no real light," or if the claims cannot

be resolved by the Court's personal knowledge or recollection.  *Machibroda v. United States*,

368 U.S. 487, 494-95 (1962).  However, even these types of claims may be summarily denied

without a hearing if they raise no constitutional issues, if they are wholly incredible, or if they

are conclusory and lack specific and detailed supporting facts.  *See United States v. Butt*, 731

F.2d 75, 77 (1st Cir. 1984).

## III. Ineffective Assistance of Counsel

Corder claims that his counsel was ineffective in several ways. To prevail on these claims, he must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, Corder must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### A. Failure to Prepare for Suppression Hearing

Corder argues that counsel "was completely unprepared for motion hearing." (Doc. 63 at 6.) Although not expressly stated, he is apparently referring to the suppression hearing.

At the suppression hearing, the Government presented the testimony of the two arresting officers. Agent Cisneros testified that he received an anonymous phone call at approximately 11:30 a.m., claiming that "Todd"—a thin, short, white male with a shaved head—was selling methamphetamine from the back of property at 713 North Mesa in Carlsbad. (Transcript of 3/3/06 Suppression Hearing [hereafter Suppression Tr.] at 3-5.) Agent Cisneros testified that he was already familiar with that address because it was "a documented drug house." (*Id.* at 4.) He and Agent Martinez set up surveillance of the residence approximately half an hour later. (*Id.* at 5-6.) Over the next hour or so, they observed approximately thirteen vehicles enter a public alley behind the residence. Although the agents could not see where some of the vehicles went, they did see approximately eleven vehicles pull into the back of the property at 713 North Mesa

and then leave within a few minutes of their arrival.  (*Id.* at 9-11, 14-15.)  According to Agent Cisneros, this activity was consistent with drug trafficking.  (*Id.* at 15-16.)

Agent Cisneros testified that they followed one vehicle that pulled out of the property until the vehicle stopped at a store.  The agents questioned the driver, Tausha Thompson, about drug activity at the residence, but she gave them no information.  (*Id.* at 16-19.)

The agents then approached the back of the residence on foot.  After making eye contact with the agents, Corder started walking away from them.  When the agents identified themselves as police officers, Corder ran away from them.  (*Id.* at 20-25.)  The agents caught up to Corder, "grabbed" him,  "wrestled" him down, and removed a gun and a black pouch from his pants. (*Id.* at 34-36.)  Agent Martinez testified that the bag contained a substance they believed to be methamphetamine.  (*Id.* at 103-04.)

After the agents testified, Corder testified that he rented a room and the outbuildings at 713 North Mesa.  (*Id.* at 120-21.)  He used the outbuildings to do his work as an auto mechanic. (*Id.* at 121.)  Corder also testified regarding the placement of some tarps that he hung up in the back yard.  He claimed that he installed the tarps for privacy.  (*Id.* at 122-23.)  Corder denied that thirteen cars came and went at the back of the property during the time in question.  (*Id.* at 125-26.)  He also disputed the agents' description of their encounter with him.  He claimed that they yelled at him to put his hands up and before he had time to run they were upon him.  (*Id.* at 129-30.)  Finally, Corder testified that earlier in the day he had a "confrontation" with his landlady's ex-husband.  The ex-husband threatened to kill him.  (*Id.* at 126.)  On cross-examination, Corder admitted that he pulled a gun and held it to the ex-husband's head.  Although the ex-husband said that he had a weapon, Corder did not see one on him.  (*Id.* at 137.)

4

In rebuttal, the Government called Leslie Barnes, who owned the property at 713 North Mesa. (*Id.* at 139-40.) She testified that when Corder and Tausha Thompson were in town she would let them stay in her den. (*Id.* at 141-42.) According to Barnes, Corder never stayed at her house for extended periods, but sometimes he spent two or three nights there. (*Id.* at 142-43.) She and Corder did not have any sort of rental agreement, and he never paid her to stay at the house. He offered to help Barnes with her utility bills, but he never did. (*Id.* at 143.) Barnes did not believe that Corder spent the night before he was arrested at her house because she was painting the house at that time and even she was not staying there. (*Id.* at 143-44.) Corder came to her house that day to use the shower and to work on cars that he kept in her carport. (*Id.* at 144-45.)

Barnes described the confrontation between Corder and her ex-husband, stating that her ex-husband "had been calling and threatening and cussing at Todd and stuff, and he'd said he was coming over to kill Todd or do something, I don't know, fight or whatever." (*Id.* at 146.) The ex-husband came to the house and he and Todd "got into it." (*Id.* at 146-47.) The fight culminated with Todd pulling a gun and "fixing to shoot" the ex-husband. (*Id.* at 147.)

In his § 2255 motion, Corder complains that while questioning the agents, Beauvais did not "press the fact that there is absolutely no proof of a 3+ hour surveillance story (i.e. pictures, license plates, makes of models of cars etc.) where 13 plus cars were said to purchase meth . . . ." (Doc. 63 at 6-7.) He also complains that counsel did not "press the fact that the reason I had a firearm was that my life had been threatened twice that day by [the ex-husband] who is known and has been convicted of extreme violent-acts. Also known to be armed." (*Id.* at 7.)

As to his first complaint, Corder is simply wrong. During the cross-examination of Agent Cisneros, the following exchange occurred:

5

Q.      Did you have any kind of equipment set up so that you could record your surveillance as far as these comings and goings, in case that would be helpful to you in a later proceeding?

A.      No.

Q.      Did you write down in a book the make, model, description, and license number of these cars that were coming and going from that location?

A.      No, sir.

Q.      And why not?

A.      I don't know.

Q.      Is that something you normally do?

A.      There's been times we've gotten license plates, yes.

Q.      I mean, if you're a drug agent and you're pretty darn sure that somebody's buying drugs, wouldn't it be helpful to write down the make, model, description, and license number of someone who you perceived to be a drug purchaser?

A.      Yes.

Q.      But you didn't do it?

A.      I didn't do it.

Q.      So all we've got today is your word on how many cars came and went?

A.      That's correct.

(Suppression Tr. at 51-52.)

As for Corder's second complaint, it is true that Beauvais did not delve deeply into Corder's reason for carrying the gun. However, that issue was tangential to the legality of Corder's search and seizure, which was the central issue to be determined at the suppression hearing. It is also possible that Beauvais hoped to avoid revealing that Corder had threatened to kill the ex-husband, going so far as to hold the gun to the man's head. In any event, the Court was made aware of the ex-husband's threat through Corder's direct examination, and Barnes, a government witness, corroborated Corder's testimony. Corder has not demonstrated that Beauvais's failure to pursue this issue was objectively unreasonable or that he suffered any prejudice.

Corder also asserts that Beauvais "claimed he knew nothing about a witness for the prosecution and had no prepared questions or rebuttals." (Doc. 63 at 6.) Corder does not

identify the witness to whom he is referring.  Although Beauvais did not offer any sur-rebuttal
evidence, he thoroughly cross-examined all three of the Government's witnesses.  His questions
indicate that he was prepared for the hearing.  For example, he questioned Agent Cisneros about
information that Cisneros included in his testimony but that was omitted from the federal
complaint and other documents.  (Suppression Tr. at 38.)[2]

Corder complains that Beauvais talked to him for less than one hour in preparation for
the hearing and that Beauvais failed to contact defense witnesses or to present any evidence
countering Barnes's testimony that he did not live at the residence.  (Doc. 63 at 6-7.)  There is
nothing in the record or in the § 2255 motion to indicate that a longer discussion with Corder
was necessary or that it would have made a difference at the hearing.  Similarly, Corder does not
identify any defense witnesses or describe what their testimony would have been, nor does he
suggest what evidence existed to prove that he lived at the residence.  These claims are
conclusory and speculative.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994)
("Although we must liberally construe Defendant's pro se petition, [citation omitted] we are not
required to fashion Defendant's arguments for him where his allegations are merely conclusory
in nature and without supporting factual averments."); *see also United States v. Larsen*, 175 F.
App'x 236, 240 (10th Cir.) (unpublished) (rejecting claim that counsel was ineffective in failing

---

[2]  Although the record reflects that Beauvais was generally prepared for the suppression hearing, I
note that he did elicit some deleterious testimony.  During cross-examination, Barnes indicated that a tarp
would have been pulled open so that the agents could see Corder at the back of the property from the
public alley.  (Suppression Tr. at 149-50.)  In denying the motion to suppress, Judge Brack credited
Barnes's testimony and found that a tarp did not cover the carport bay on the day in question and that the
agents had an unobstructed view of Corder from the alley.  (Doc. 53 at 4-5.)  But Judge Brack also found
that Corder was not a renter or overnight guest at the house and thus did not have a reasonable
expectation of privacy in the backyard.  (*Id.* at 6.)  Therefore, the motion to suppress would have been
denied regardless of Barnes's testimony about the tarp.  Assuming without deciding that Beauvais's
performance was deficient in this regard, Corder cannot demonstrate that he was prejudiced by the
testimony.

to investigate or present witnesses because movant did not indicate that any favorable witnesses existed), *cert. denied*, 127 S. Ct. 731 (2006); *Hodges v. United States*, 316 F. Supp. 2d 688, 692 (S.D. Ill. 2004) (same).

### B. Failures Related to Sentencing

At the initial plea hearing, Corder was advised that he would be sentenced to five-to-forty years in prison for possession with intent to distribute five grams and more of methamphetamine and that he would be sentenced to a consecutive five-year term for carrying a firearm during and in relation to drug trafficking. Corder stated that he understood this information. (Plea Tr. at 3-4.) Before Corder withdrew his plea, a pre-sentence report (PSR) was apparently circulated to him and his attorney. That PSR indicated that the base offense level was 18. (Transcript of 6/14/06 Sentencing Hearing [hereafter Sentencing Tr.] at 5-9.)

After Corder withdrew the initial plea and lost the suppression motion, he entered his second guilty plea, which forms the basis for his conviction. In the plea agreement associated with that plea, the parties stipulated that the drug offense involved between five and twenty grams of pure methamphetamine. (Doc. 57 at 4.) The plea agreement also reiterated the sentencing range that Corder had been orally advised of during the first plea hearing. (*Id.* at 2-3.) A new PSR was prepared with a base offense level of 26. (Sentencing Tr. at 5.) The base offense level was computed by using the portion of the mixture that was actually methamphetamine rather than the entire amount of the mixture. (*Id.*)[3]

---

[3] The Sentencing Guidelines state, "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 n.B (2007).

At the commencement of the sentencing hearing, Corder stated that he had not seen the PSR.  (Sentencing Tr. at 2.)  After a recess at which he reviewed the PSR with Corder, Beauvais clarified that Corder had seen a prior PSR, but "had not seen the copy after the time that [the defense] had filed [its] objections, but . . . it didn't change as far as the recommendations . . . ."  (*Id.* at 3-4.)

Although the objections to the PSR did not challenge the computation of the base offense level (Doc. 58), Beauvais indicated at the sentencing hearing that Corder could not understand why the offense level had changed so dramatically from the first PSR to the second PSR.  Corder suspected he was being penalized for withdrawing his initial plea and pursuing the suppression motion.  (Sentencing Tr. at 5, 8-9.)  Beauvais explained that the change was caused by using the portion of the mixture that was actually methamphetamine—as dictated by the Guidelines—and stated that the prosecutor had represented to him that if they had proceeded to sentencing on the initial plea the Government would have objected to the original PSR's use of the entire amount of the mixture.  (*Id.*)[4]

The new PSR recommended a two-level enhancement for obstruction of justice and the denial of any adjustment for acceptance of responsibility.  (Doc. 58.)  Corder objected to these aspects of the PSR.  (*Id.*)  In overruling the objections, Judge Brack indicated that the enhancement for obstruction of justice was warranted because Corder gave false testimony at the

---

[4] It appears that Beauvais never saw the original PSR.  He stated at the sentencing hearing that the drug-quantity issue was not included in the objections because when he saw the PSR, "that issue had been corrected."  (Sentencing Tr. at 7.)  He further explained, "[T]he best that I can understand – I wasn't the first attorney involved in that – is that that was the initial document that was circulated by Mr. Hill.  But apparently, it changed from 18 to 26 somewhere along the line."  (*Id.*)

suppression hearing and that it would be inherently contradictory to make an adjustment for acceptance of responsibility for someone who had obstructed justice. (Sentencing Tr. at 17-18.)[5]

The PSR placed Corder in criminal history category II based on a thirteen-year-old warrant for violation of misdemeanor probation. (Doc. 58.) Combined with the base offense level of 26 and the two-point enhancement, the resulting Guideline range for the methamphetamine count was 87-to-108 months. Because the gun count required a mandatory five-year consecutive sentence, Corder's minimum Guideline sentence was 147 months. If Corder were in criminal history category I, the Guideline range for the methamphetamine count would have been 78-to-97 months, resulting in a total minimum Guideline sentence of 138 months. Corder objected to the PSR's placing him in criminal history category II. (*Id.*) While arguing that the PSR correctly placed Corder in criminal history category II, the prosecutor stated that he would not object to a 138-month sentence. (Sentencing Tr. at 13.) This is the sentence that Judge Brack imposed. (*Id.* at 18.)

In his § 2255 motion, Corder states that counsel never informed him of the sentencing date. Both he and Beauvais appeared at the sentencing hearing. Assuming counsel did not tell him about the hearing in advance, Corder does not explain how this prejudiced him. If Corder is complaining about Beauvais's failure to review the PSR with him before the hearing, that failure was corrected during the recess and again Corder does not explain how he was prejudiced. I recommend that this claim be denied without an evidentiary hearing.

---

[5] The Sentencing Guidelines state that conduct resulting in an enhancement for obstruction of justice "indicates that the defendant has not accepted responsibility" except in extraordinary cases. U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 n.4 (2007).

Corder also claims that counsel did not inform him of the length of his sentence. Construing this claim liberally, I assume Corder means that Beauvais did not explain the significance of basing the offense level on the portion of the drug mixture that was actually methamphetamine rather than on the entire amount of the mixture, and that Corder thus did not know that his minimum Guideline sentence was more than the statutory minimum sentence of 120 months as set forth in the plea agreement. This claim involves occurrences outside the courtroom. Because an evidentiary hearing is necessary for Corder's claims regarding the failure to appeal (discussed below), I recommend that this claim be addressed at the hearing as well. At the hearing, Corder will have to show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, he would have insisted upon going to trial. *See United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, 126 S. Ct. 2318 (2006).

Corder further claims that "prior to sentencing [he] was supposed to have a meeting with [the] D.E.A. and U.S. Attorney for cooperation and reduction of sentence." (Doc. 63 at 7-8.) He asserts that counsel failed to follow through with this.

In its response to the § 2255 motion, the Government asserts, "At sentencing, there was a brief discussion between the United States and Counsel regarding a cooperation debrief, but that debrief never occurred because the United States elected not to debrief the Defendant in light of his perjured testimony, and advised Counsel of that fact." (Doc. 66 at 12.) The Government has also provided an affidavit by Beauvais. In the affidavit, Beauvais claims that he informed the D.E.A. that Corder wanted to meet in an effort to obtain a favorable sentence. (*Id.* Ex. 5.) Attached to the affidavit is a letter from Beauvais to Corder, dated after Corder was sentenced,

11

stating that the D.E.A. had postponed the meeting due to scheduling conflicts with the prosecutor.  (*Id.* Ex. 5B.)

The Government's response supports Corder's contention that he informed Beauvais that he wanted to have a debriefing and indicates that the Government was at least initially interested in the idea.  Although the Government offers a plausible explanation for the failure to conduct the debriefing, I cannot rely on information outside the record to resolve this issue against Corder without a hearing.  *See Butt*, 731 F.2d at 77-78; *Sciberras v. United States*, 404 F.2d 247, 250 (10th Cir. 1968); *see also United States v. Underwood*, 577 F.2d 157, 159 (1st Cir. 1978) ("We cannot very well adopt as generally applicable to all cases the principle that the unsworn representations of a prosecutor shall be a satisfactory substitute for evidence.").  Therefore, I recommend that the debriefing issue be addressed at the evidentiary hearing.

Corder also claims that Beauvais "didn't get around to preparing" an acceptance-of-responsibility form for sentencing purposes.  (Doc. 63 at 8.)  Assuming counsel failed in this regard, Corder was not prejudiced.  It is clear that Judge Brack denied Corder an adjustment for acceptance of responsibility not because of the lack of a form but because Corder gave false testimony at the suppression hearing.  *See* discussion *supra* at 10.

### C. Failure to Communicate Proposed Plea Bargain

Corder asserts that "no plea bargain was brought to [his] attention" by his attorney. (Doc. 63 at 6.)  He claims that if counsel had brought a plea bargain to his attention and had informed him of a potential 138-month sentence, "a plea bargain would have been seriously considered."  (*Id.*)  The only plea bargain in the record is the one that was accepted by Corder. Because Corder provides no information about any other proposed bargain and provides nothing to indicate that another bargain was even offered, this claim could be subject to summary denial

as conclusory and speculative.  However, the Government acknowledges that it made another

plea offer that would have resulted in a 120-month sentence.  (Doc. 66 at 6 & n.1.)  According to

the Government, the offer was rejected on the day the motion to suppress was filed.  (Doc. 41,

Doc. 66 at 6 & n.1.)  Because the Government has supplied information that supports Corder's

claim, I recommend that this claim be addressed at the evidentiary hearing.[6]

To prevail on this claim, Corder will have to demonstrate that counsel failed to notify

him of a plea offer or failed to provide adequate advice regarding whether to accept the offer and

that there is a reasonable probability that he would have accepted the offer but for this failure.

*See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997); *United States v. Blaylock*, 20

F.3d 1458, 1465-66 (9th Cir. 1994).  A defendant's self-serving statement that he would have

accepted a plea offer is insufficient to establish prejudice; there must be objective evidence to

support the allegation.  *See United States v. Morris*, 106 F. App'x 656, 659 (10th Cir. 2004)

(unpublished); *Bachicha v. Shanks*, 1995 WL 539467, at *1 (10th Cir. Aug. 31, 1995)

(unpublished); *see also United States v. Quiroz*, 228 F. Supp. 2d 1259, 1265 (D. Kan. 2002)

---

[6] The Government asserts that Corder rejected the plea offer after Beauvais informed him of it and of the sentencing range.  The Government relies on copies of correspondence between the prosecutor and Beauvais.  (Doc. 66 at 6 & Ex. 1-3.)  Letters from the prosecutor to Beauvais indicate that the prosecutor sent Beauvais a proposed plea agreement and a lab report showing that Corder possessed more than five grams of pure methamphetamine, making his sentencing range begin at 147 months under the Sentencing Guidelines.  (*Id.* Ex. 1, 2.)  A letter from Beauvais to the prosecutor states that "information regarding an error in the sentencing guidelines as stated in the pre sentence report . . . was provided to Mr. Corder" and that the plea offer was unacceptable "because of the availability of relief for violation of [Corder's] constitutional rights."  (*Id.* Ex. 3.)  Enclosed with the letter was a copy of the just-filed motion to suppress.  The letter contains the notation "cc: client."  (*Id.*)  This correspondence does not establish that Beauvais accurately informed Corder of the plea offer or the sentencing range.  Even if it did establish these facts, it is not part of the files and records of the case and thus cannot be used to resolve material issues of fact against Corder without a hearing.  *See Butt*, 731 F.2d at 77-78; *Sciberras*, 404 F.2d at 250.

(citing unpublished cases from this circuit and published cases from other circuits, and noting that there is a split in authority).

### D. Failure to Appeal

Corder asserts that counsel was ineffective in failing to file an appeal. He specifically faults counsel for not raising issues related to his sentence and to the denial of the motion to suppress.

The Supreme Court has long recognized that "a lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1155-56 (10th Cir. 2003); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Rodriguez v. United States*, 395 U.S. 327, 329-30 (1969). On the other hand, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 477. If the defendant neither instructed counsel to file an appeal nor instructed him not to file an appeal, the defendant cannot prevail unless he satisfies *Strickland*'s two-prong test.

To satisfy the deficient-performance prong in this context, the defendant must demonstrate that counsel had a duty to consult with him about an appeal but failed to do so. *Id.* at 478. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In determining whether counsel had a duty to consult with the defendant about an appeal, "a highly relevant factor" is whether the defendant pled guilty. *Id.* This is because a guilty plea limits the

14

issues that can be raised on appeal and may indicate that the defendant seeks an end to judicial proceedings. *Id.* Even if the defendant pled guilty, counsel may have a duty to consult with him about an appeal if he did not receive the sentence contemplated in a plea agreement or if, as in this case, the agreement expressly reserved the right to appeal some issues. *See id.*

To satisfy the prejudice prong, the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

Corder mentions counsel's failure to file an appeal at two points in his § 2255 motion. Immediately following his contentions about counsel's performance at the suppression hearing, Corder complains simply that counsel "entered no appeal for motion hearing." (Doc. 63 at 7.) Later, he complains of "no sentence appeal . . . even though [he] was [sentenced] for a crime different from what [he] was charged with." (*Id.* at 8.) After explaining why he believes he was wrongfully sentenced, Corder concludes by stating that counsel "never filed an appeal to this even though I was adamant about him doing so." (*Id.* at 8A.) Corder's motion is sworn under penalty of perjury pursuant to 28 U.S.C. § 1746. (*Id.* at 11.)

In its response, the Government construes Corder's motion as claiming "that he instructed Counsel to file a Notice of Appeal, and that Counsel failed to file it." (Doc. 66 at 11.) The Government attempts to rebut this claim with Beauvais's affidavit and copies of correspondence purporting to be from Beauvais to Corder. According to the Government, these documents establish that Beauvais did not believe that there were any meritorious grounds for an

appeal and that Corder agreed with this assessment.[7]  The Government further argues that Corder

was not prejudiced by the failure to appeal because the appeal would not have been successful.

(*Id.* at 11-12.)

        As already explained, I cannot rely on information outside the record to deny Corder an

evidentiary hearing.  Moreover, the likelihood that an appeal would not have been successful is

not dispositive.  *Roe*, 528 U.S. at 486; *Snitz*, 342 F.3d at 1155-59.  Because there is a factual

dispute between Corder and Beauvais regarding the failure to appeal, an evidentiary hearing is

necessary.[8]

## IV. Exculpatory Evidence

        Finally, Corder claims that his "conviction was obtained by [the] unconstitutional failure

of [the] prosecution to disclose evidence favorable to defendant."  (Doc. 63 at 8B.)[9]  He alleges

---

        [7] In the affidavit, Beauvais states that he advised Corder of the time for filing an appeal and the
probability of success.  According to Beauvais, Corder's parents notified him that Corder did not intend
to pursue an appeal.  (Doc. 66 Ex. 5.)  The attached correspondence advises Corder of the time limit for
appealing, but states Beauvais's opinion that Corder had no meritorious appellate issues.  (*Id.* Ex. 5B-D.)
One of the letters states, "I advised, and you agreed, you had no basis for a winnable appeal."  (*Id.* Ex.
5B.)

        [8] In addition to his claims of ineffective assistance of counsel, Corder makes a separate claim that
he was convicted on the basis of evidence obtained through an unlawful search and seizure.  Because this
is apparently one of the claims that Corder wished to bring on appeal, I will not pre-judge the claim by
expressing any opinion on it in this collateral proceeding.  *See Snitz*, 342 F.3d at 1159.  If the Court
determines that Beauvais was ineffective in failing to file the appeal, he will be able to raise the issue in a
subsequent appeal.  *See United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) (holding that
although claims that could have been raised on direct appeal ordinarily cannot be raised in a § 2255
motion, ineffective assistance of counsel constitutes "cause and prejudice" to excuse this procedural
default).

        [9] Although this claim was not raised at trial or on appeal, the Government does not assert
procedural default as a defense—perhaps because Corder's § 2255 motion raises ineffectiveness—of
counsel.  *See Harms*, 371 F.3d at 1211. The claim is easily resolved on other grounds.  Because raising
the procedural bar *sua sponte* would not promote judicial efficiency, I decline to do so.  *See Hines v.
United States*, 971 F.2d 506, 509 (10th Cir. 1992).

that, to his knowledge, witnesses for the defense were never contacted by the prosecution or the

defense and that if they were contacted, statements favorable to him were never disclosed.  He

contends that if defense witnesses had been contacted, they would have given statements

refuting the testimony of the arresting officers.  (*Id.*)  Corder also asserts that "there have been

allegations in this case of defendant[']s witnesses being threatened against testifying on

defendant[']s behalf.  Defense couns[e]l knew this and should have informed [the] court and

actions been taken."  (*Id.*)

   To the extent that Corder is attempting to raise a claim that the prosecution violated

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), by not contacting his witnesses, his attempt fails

because the prosecution does not have a constitutional duty to discover witnesses favorable to

the accused.  *See Simmons v. Wainwright*, 585 F.2d 95, 96 (5th Cir. 1978); *see also Arney v.

Roberts*, No. 92-3155, 1993 WL 425121, at *2 (10th Cir. Oct. 21, 1993) (unpublished) (citing

*Simmons* for this proposition).

   To the extent Corder is attempting to raise either a *Brady* claim or an ineffective

assistance of counsel claim, the attempt also fails because his allegations are conclusory and

speculative.  As I have already noted, Corder does not identify the witnesses or describe what

information they would have provided.  Corder also fails to identify which witnesses were

threatened or by whom.  *See Fisher*, 38 F.3d at 1147; *see also Hatch v. Oklahoma*, 58 F.3d 1447,

1457 (10th Cir. 1995) (holding that ineffective assistance claim failed because the defendant did

not state what exculpatory evidence an adequate investigation would have discovered), *overruled

on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001); *United

States v. McPartlin*, 595 F.2d 1321, 1346 n.32 (7th Cir. 1979) (holding that *Brady* claim failed

because it was based on mere conjecture that there might have been favorable evidence that was undisclosed).  Accordingly, this claim should be denied without an evidentiary hearing.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1) with the exception of the claims regarding counsel's failure to inform him of the sentence length, failure to arrange a debriefing, failure to inform him of a proposed plea bargain, and failure to appeal, the claims in Corder's 28 U.S.C. § 2255 motion be denied;

2) the Federal Public Defender be appointed to represent Corder; and

3) upon entry of appearance, counsel for Corder and counsel for the United States confer to ascertain whether this matter can be resolved informally and, if not, inform the Magistrate Judge of appropriate dates for the evidentiary hearing and/or briefing schedule.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE